UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

YVONNE WRIGHT,

                Plaintiff,                24-cv-2356 (PKC)

   -against-                           OPINION


TD BANK, N.A.
                Defendant.

-----------------------------------------------------------x

CASTEL, U.S.D.J.:

Plaintiff Yvonne Wright brings this action against TD Bank, N.A. ("TD Bank") alleging that it permitted an unauthorized individual to remove funds from a safe deposit box that she held with the bank. TD Bank moves to dismiss the Complaint under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim. As will be explained, the Court will grant defendant's motion to dismiss.

BACKGROUND

The Court summarizes the Complaint's factual allegations, and for the purposes of the motion, accepts them as true, drawing all reasonable factual inferences in favor of Wright as the non-movant. Faber v. Metropolitan Life Ins. Co., 648 F.3d 98, 102 (2d Cir. 2011).

In or around 2021, in exchange for an annual $90 rental fee, Wright entered into a contract, the Rental Agreement, Safe Deposit Rules and Regulations ("the Agreement"), with TD Bank. (Compl't ¶ 9; Pelura Decl., Ex. A.) The Agreement permitted Wright to use safe deposit box 602 located at TD Bank's 300 West 125th Street, New York, New York 10027 branch, for

twelve months. (Id. ¶¶ 7, 9-10.) Wright continued to pay the annual fee and the Agreement automatically renewed each year. (Id. ¶¶ 14, 15.) Wright was the only lessee of safe deposit box 602 and the only person authorized to access the box. (Id. ¶¶ 11, 12.)

Beginning in February of 2021 until October of 2023, Wright began placing currency into the safe deposit box. (Id. ¶¶ 19, 20.[1]) In December 2023, she found a significant amount of cash—$80,000—was missing from the box. (Id. ¶ 20; Wright Aff.) Based on the missing funds, Wright alleges that TD Bank allowed unauthorized individuals to access the safe deposit box. (Compl't ¶¶ 22-63.) Wright brings claims of breach of contract, negligence, and gross negligence against TD Bank. (Id.)

RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub, Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll International, 231 F.3d 82, 86 (2d Cir. 2000)).

In addition to the pleadings, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which

---

[1] The paragraphs of the Complaint are misnumbered following paragraph 18. The next paragraph is labeled as "8" and numbering continues from "8." For citations to the Complaint from "18" onwards, the Court refers to a corrected paragraph number for clarity.

they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (internal quotations omitted). When the complaint relies upon terms of an agreement, courts "need not accept its description of those terms, but may look to the agreement itself." Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005).

DISCUSSION

In deciding this motion, the Court has considered Exhibit A to the Declaration of Gabrielle Pelura, tendered by TD Bank, which is a complete copy of the "Rental Agreement, Safe Deposit Rules and Regulations" entered into by the parties. (ECF 21.) The Agreement, which forms the basis of Wright's breach of contract claim, may be properly considered on a motion to dismiss as it is incorporated into the Complaint and Wright relied upon the Agreement in bringing suit. Rothman, 220 F.3d at 88. Wright mounts no challenge to its authenticity.

The parties do not dispute that New York law governs Wright's claims and their mutual reliance on New York law functions as implied consent.[2] Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'").

TD Bank argues that Wright's claims should be dismissed because the Agreement unambiguously prohibits the storage of currency and that the Agreement expressly waived TD Bank's liability for any loss. Based on the terms of the Agreement and New York law, the Court will dismiss Wright's Complaint.

---

[2] New York law would still apply, even in the absence of implied consent, due to the choice-of-law provision in the Agreement. Specifically, the Agreement states, "This safe deposit box rental contract shall be governed by the law of the state in which the safe deposit box is located." (Pelura Decl., Ex. A at ¶ 23.) The safe deposit box was located in New York and, thus, New York law would apply to the terms of the Agreement. Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996).

Under New York law, "[i]t is universally understood and accepted that a bank is authorized to rent safe-deposit boxes 'upon such terms and conditions as may be prescribed.'" Uribe v. Merchants Bank of New York, 91 N.Y.2d 336, 341 (1998) (citation omitted). While the relationship of a bank to the lessee of a safe deposit box is generally considered to be that of bailee to bailor, banks are permitted to limit their common law obligations in a leasing agreement provided that the terms are "not unconscionable, offensive to public policy [or] the product of fraud or undue influence." Goldbaum v. Bank Leumi Trust Co. of New York, 543 F. Supp. 434, 436 (S.D.N.Y. 1982) (Duffy, J.) (finding, in New York, that claims related to the leasing of safe deposit boxes, a defendant's liability was governed by the standards set forth in the lease). A leasing agreement will be enforced under New York law when its meaning is "plain and clear," although any ambiguities are to be construed against the drafter. Uribe, 91 N.Y.2d at 341.

It is undisputed that in leasing safe deposit box 602, Wright entered a contract, the "Rental Agreement, Safe Deposit Rules and Regulations," with TD Bank. The Agreement sets forth all of the terms and conditions of Wright's use of the safe deposit box. Wright has not argued that the provisions are unconscionable, violative of supervening public policy, or the product of undue influence. The Agreement contains an "acknowledge[ment]" by the "Lessee," i.e. Wright, "that the safe deposit box is not intended to store . . . such things as domestic or foreign currency whether in paper, coin, or other form." In full, the relevant section, titled "Permitted Uses" reads as follows:

> 10. **Permitted Uses**. Lessee(s) shall use the safe deposit box for storage only of Lessee's items and for no other purpose or use. Lessee acknowledges that the safe deposit box is not intended to store, by way of example without limitation, such things as domestic or foreign currency whether in paper, coin, or other form. Lessee(s) further agrees not to store any property that is inherently dangerous, malodorous or destructive in nature. If any such item is stored in

>the safe deposit box, the Bank may drill the safe deposit box and
>remove the contents, the cost of which must be paid by the Lessee(s)
>as well as the cost of storage and/or disposal.

Pelura Decl., Ex. A ¶ 10.

TD Bank argues that the Agreement prohibits the storage of currency and, therefore, Wright's storage of currency bars her recovery as a matter of law. New York courts have routinely dismissed plaintiffs' claims arising from missing or stolen cash when a safe deposit box lease prohibits the storage of currency. Helfer v. JP Morgan Chase Bank, N.A., 19 Civ. 0008 (NRB), 2020 WL 6823240, at *6 (S.D.N.Y. Nov. 20, 2020) (collecting cases); see also Uribe, 91 N.Y.2d at 342 (finding that the defendant was relieved of liability when the safe deposit box lease prohibited the storage of cash and the plaintiff violated that term of the lease).

The Agreement states that the safe deposit box is "not intended to store" domestic currency. (Pelura Decl., Ex. A ¶ 10.) Wright argues that the language is ambiguous and differs from cases where the lease had explicitly prohibited the storage of currency. But the Agreement's provision mirrors language in similar New York cases where courts found that a lease that stated that a safe deposit box was not intended to store cash "prohibited the storage of cash and clearly relieved [the] defendant of liability for loss of stored cash." Levina v. CitiBank, N.A., 16 A.D.3d 160, 161 (1st Dep't 2005). While the First Department's opinion in Levina did not quote the lease agreement, the record in the lower court reveals that the lease agreement stated, "the Box is not intended to store . . . domestic or foreign currency or coin" (quoted in affirmation filed in Levina v. CitiBank, N.A., No. 123941/02 (Sup. Ct., N.Y. County, Oct. 27, 2003), 2003 WL 25578259). See Martin v. CitiBank, N.A., No. 101082/06, 2008 WL 5377465, at *1 (Sup. Ct., N.Y. County Dec. 15, 2008) (finding that the provision in the safe deposit lease, which stated that "the Box is not intended to store . . . domestic or foreign currency or coin"

- 5 -

relieved the defendant of liability for loss of stored cash), aff'd, 64 A.D.3d 477 (1st Dep't 2009). As such, this contractual prohibition on the storage of currency is a valid and enforceable provision.  Therefore, the Court concludes that Wright's violation of the Agreement by storing currency in safe deposit box 602 relieves TD Bank from liability.

Because the breach of contract claim fails, Wright's tort claims labelled negligence and gross negligence must also fail.  "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 58 (2d Cir. 2012) (citing Clark–Fitzpatrick v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987)). To be actionable, the "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." Clark-Fitzpatrick, 70 N.Y. 2d at 389; see Cobblestone Foods, LLC v. Branded Concept Dev., Inc., 200 A.D.3d 845, 847 (2d Dep't 2021) ("Although the plaintiff alleges torts against Branded Concept, including gross negligence, its tort allegations are essentially that Branded Concept did not perform its contractual obligations, which sounds in breach of contract . . . .").  Wright's claims arise exclusive out of the relationship by which she secured the right to store certain types of property in a safe deposit box and that relationship is created by the Agreement which limits the property that may be stored.  Indeed, Wright's negligence claim expressly and repeatedly refers and relies upon the Agreement. (Compl't ¶¶ 36-42; "A bailment was created upon the execution of the Contract in exchange for the payment of consideration by Plaintiff to Defendant TD Bank.").

TD Bank also argues that negligence and gross negligence claims, as well as the breach of contract claim, are shielded from liability by the Agreement's exculpatory provision.

The Agreement explicitly waived "every presumption" that a loss occurred through the negligence of TD Bank and agreed that TD Bank "shall not be liable for any loss sustained." (Pelura Decl., Ex. A ¶ 11.)  The provision states in full as follows:

> 11. **Liability of the Bank.**  It is expressly understood and agreed that Bank has no knowledge of and exercises no supervision or control over the deposit, examination or removal of any property in or from the safe deposit box.  Lessee(s) assumes all risks arising out of the storage of property in the safe deposit box (including but not limited to loss or damage due to fire, water, robbery, burglary, compliance by the Bank with process it reasonably believes to be valid or the negligence of the Bank), expressly waives every presumption of law that a loss shall have occurred through the negligence of the Bank and agrees that Bank shall not be liable for any loss sustained by Lessee(s).  Lessee(s) acknowledges that the safe deposit box is not a deposit account and is not insured b the Federal Deposit Insurance Corporation.

Pelura Decl., Ex. A ¶¶ 10-11.

This is a valid and enforceable limitation of TD Bank's liability.  See Uribe, 91 N.Y.2d at 341 ("[A]n exculpatory provision ordinarily will be enforced when its language 'expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence.'").

Wright purports to plead a claim in gross negligence and argues that TD Bank's alleged gross negligence renders the exculpatory clause unenforceable.  Although, under New York law, exculpatory provisions cannot bar claims based on gross negligence,[3] Wright's purported gross negligence claim does not plausibly allege conduct that constitutes gross negligence.  New York defines gross negligence to mean "a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others."

---

[3] See Matter of Part 60 Put-Back Litigation, 36 N.Y.3d 342, 354 (2020) (concluding that a "sole remedy" provision was not an unenforceable "exculpatory" clause).

Gentile v. Garden City Alarm Co., 147 A.D.2d 124, 131 (2d Dep't 1989) (citing NY Pattern Jury Instructions at 2:10A). Wright's separately pled gross negligence claim also relies on the Agreement for the source of a duty to her (Compl't ¶¶ 52, 53, 55, 56, 57) and pleads only simple negligence and nothing approaching the "slight care" or "complete disregard" standard. (Id. ¶ 61; "Defendant TD Bank's, its agents and employees, conduct in failing to safeguard Plaintiff's property constituted gross negligence as Defendant TD Bank failed to exercise reasonable care in maintaining custody of Plaintiff's items placed in [her] safe deposit box.") The conclusory allegation of "gross negligence" is nothing more than the invocation of a legal label without plausibly alleging any facts that show that the pleader is entitled to relief. Iqbal, 556 U.S. at 678.

To summarize, the breach of contract claim is barred by the language of section 10 of the Agreement. The negligence and gross negligence claims are barred as duplicative of the breach of contract claim because no duty independent from the Agreement is alleged. Alternatively, the breach of contract and negligence claims are barred by the limitation of liability provision, section 11 of the Agreement, and the purported gross negligence claim, which might otherwise fall outside the limitation of liability, is conclusory and not plausibly alleged.

The Court therefore will grant TD Bank's motion to dismiss the Complaint.

CONCLUSION

Defendant TD Bank's motion to dismiss the Complaint is GRANTED. The Clerk is directed to terminate this motion (ECF 19), enter judgment for the defendant and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 14, 2024